Roy L. WEEKS, Individually and as Next Friend of Stephanie Weeks, a Minor Child, and Roy Lee Weeks, Jr., Individually, Appellants,

v.

HARRIS COUNTY HOSPITAL DISTRICT, Appellee.

No. A14–89–250–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 18, 1990.

Michael P. Mallia, Paul S. Jacobs, Houston, for appellants.

Jay S. Siskind, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is a tort case in which the trial court granted summary judgment in favor of the appellee, Harris County Hospital District (appellee or Harris County Hospital). In two points of error appellants Roy L. Weeks, Stephanie Weeks, and Roy Lee Weeks (appellants or Weeks) assert that the trial court erred in granting the judgment because appellants stated a cause of action and the court erroneously interpreted the provisions of the Texas Tort Claims Act. For the reasons discussed below, we affirm the judgment of the trial court.

Linda Darlene Weeks, now deceased, was the wife of Roy L. Weeks and the mother of Stephanie and Roy Lee Weeks.

In March of 1988 Judge Jack P. Lee issued an emergency apprehension and detention warrant ordering the decedent apprehended and detained for her own welfare and protection. Although the warrant ordered the decedent to be transported and held at the in-patient mental health facility at Ben Taub Hospital for observation and examination, Ben Taub has no such in-patient facility. Mrs. Weeks arrived at the hospital; however, there is no evidence that she was officially registered into the facility for medical care. Appellee took no measures to restrain or confine Mrs. Weeks while awaiting her transfer to another facility. Several hours after her arrival at Ben Taub, the decedent voluntarily left the building and returned to her home by taxi. Within an hour of her return the decedent discharged a gun into her head causing her death.

Appellants bring two points of error. They assert that summary judgment was improper because the trial court misinterpreted the provisions of the Texas Tort Claims Act and as a result erroneously dismissed the Weeks' cause. We find no error in the trial court's judgment.

▮▮▮▮ Harris County Hospital District is a political subdivision of the State of Texas and is entitled to invoke the doctrine of governmental immunity. TEX. CONST. art. I, § 17. In the context of this case the Texas Tort Claims Act permits injured parties to overcome this state immunity if they meet two conditions. First, injury or death must be caused by a condition or use of tangible personal or real property. TEX. CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). Additionally, the governmental unit, were it a private person, must be in a position of liability to the complainant according to Texas law. *Id.* We conclude that the circumstances of the instant case do not clear either hurdle of this statutorily created exception to governmental immunity; consequently, appellants' claims against the hospital district are barred by law.

▮▮▮▮ It is clear from the facts that Mrs. Weeks sustained no injury on state proper-

ty, and state-owned equipment did not inflict her injuries. Appellants claim, however, that the hospital's failure to use restraining devices on Mrs. Weeks constitutes a misuse of that equipment and permits their cause of action. Among other cases, appellants cite *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976); *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 169 (Tex.1989); and *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528, 528–29 (Tex.1975), to support their contention. However, these cases are distinguishable from the instant case.

In *Lowe* injury resulted after Texas Tech staff failed to provide a knee brace or pad when fitting Lowe with football gear. *Lowe*, 540 S.W.2d at 298. The court held that failure to furnish an individual with proper protective items of personal property, to be used as a part of the football uniform furnished him, brought his case within the statutory waiver of immunity. *Id.* at 300. In *Robinson* a 27-year-old epileptic and mentally retarded client of Central Texas MHMR Center drowned while under MHMR supervision. *Robinson*, 780 S.W.2d at 169. Robinson's mother brought an action claiming that MHMR was negligent in failing to provide her son a life preserver. *Id.* at 170. According to the Texas Supreme Court, "A life preserver was just as much a part of Robinson's swimming attire as the knee brace was part of the uniform in *Lowe*." *Id.* Finally, in *Overton* the court allowed McGuire's cause of action when he suffered injuries in a fall from a hospital bed which was not equipped with side rails. *Overton*, 518 S.W.2d at 528–29. In all of these cases the state agency provided equipment that failed to provide for the established needs of the individual; the materials were therefore defectively incomplete for their intended use. In the instant case, hospital staff provided no equipment for Mrs. Weeks. *Lowe*, *Robinson*, and *Overton* are therefore not controlling.

Although some courts have concluded that failure to use equipment is not "use" as the term is defined under the tort claims statute, *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.—Cor-

pus Christi 1988, writ denied), this court has held that the statutory requirement of "some use of tangible property" subjects governmental units to liability for personal injuries negligently caused by the *nonuse* of tangible property. *Jenkins v. State*, 570 S.W.2d 175, 178 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ) (citations omitted). However, *Jenkins*, like the majority of the cases cited by appellants, concerns situations in which the state institution clearly assumed a duty of care for the injured individual's well-being by either confining the individual in a state prison facility, thus preventing him from seeking alternative medical care, *id.* at 176, or accepting and admitting the individual for medical treatment in a state hospital, *see Harris v. Harris County Hosp. Dist.*, 557 S.W.2d 353, 356 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Garcia v. Memorial Hosp.*, 557 S.W.2d 859, 859 (Tex.Civ. App.—San Antonio 1977, no writ); *Rodriguez v. Holmes*, 556 S.W.2d 125, 126 (Tex. Civ.App.—San Antonio 1977, no writ); *Harris Hosp. v. Pope*, 520 S.W.2d 813, 818 (Tex.Civ.App.—Fort Worth 1975, no writ).

In *Rodriguez* and *Garcia* failure to provide life-sustaining equipment such as oxygen, *Rodriguez*, 556 S.W.2d at 126, or a pediatric endo-tracheal tube, *Garcia*, 557 S.W.2d at 860, supported state liability; however, the individuals in those cases entered and were admitted to state facilities for the purpose of being treated with those or other similar life-sustaining equipment. This is not the situation in the instant case. Here there was no such reliance by appellants or Mrs. Weeks. Mrs. Weeks left the hospital of her own volition. Additionally, appellants' pleadings reflect only that Mrs. Weeks was "placed in" Ben Taub Hospital. There is no indication in the record that Mrs. Weeks was officially admitted as a patient in the Ben Taub facility; furthermore, the record suggests that appellants had no intention of admitting the deceased into the state facility but made arrangements to transfer her to another near-by hospital.

We are also unpersuaded by *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex.1983). After being mis-informed on

the results of an electrocardiogram, Salcedo left the state hospital and subsequently died of a heart attack. *Id.* at 31. Unlike the instant case, however, in *Salcedo* there was clearly a misuse of property as the attending physician failed to correctly read and interpret the electrocardiogram graphs. *Id.* at 33. Here there was no misuse nor adequate circumstances to apply nonuse of property to support state liability.

The Weeks' cause also fails to meet the second prong of the state immunity exception. The hospital could not have been held liable had it been a private institution. In all cases injury must be foreseeable to support state liability, and the state's conduct must be the proximate cause of the affliction. *See Finnigan v. Blanco County,* 670 S.W.2d 313, 317 (Tex. App.—Austin 1984, no writ) (prisoner escaped using county vehicle and killed appellant's wife in a collision following chase by authorities); *Harris Hosp. v. Pope,* 520 S.W.2d 813, 818 (Tex.Civ.App.—Fort Worth 1975, no writ) (patient crawled out of a window in the intensive care unit and jumped or fell causing injuries). In *Bryant v. Metropolitan Transit Authority,* 722 S.W.2d 738, 739 (Tex.App.—Houston [14th Dist.] 1986, no writ), the court held that the city bus system was liable when a bus driver failed to exercise due care in preventing the assault of a bus passenger. In *Bryant,* a case involving public transportation, as well as in the hospital and prison cases cited above, the state institution assumed a responsibility toward the individual. In such circumstances where the state institution was aware that the individual was relying on the agency for his care, it is reasonably foreseeable that minimal negligence by the state in fulfilling its duties could result in injury. Mrs. Weeks was not injured on or near the state operated property, but at her own home where she had voluntarily returned. Additionally, the instrument which directly caused her death was in no way state owned or controlled. Given these factors Mrs. Weeks' resulting injury is too remote to attribute to hospital negligence.

Courts have held that the most important factor in determining the liability of a hospital for failing to prevent suicide of a patient is whether the hospital authorities could reasonably have anticipated that the patient might harm himself. *Harris Hosp.,* 520 S.W.2d at 815; *see also Harris,* 557 S.W.2d at 356. However, liability exists only if the suicide proximately resulted from the negligence of the hospital or its employees. *Harris Hosp.,* 520 S.W.2d at 815. Appellants made it clear to hospital staff that Mrs. Weeks was to be treated at another facility. We conclude that hospital officials were neither negligent nor could they have reasonably anticipated Mrs. Weeks' self-destructive acts.

It is arguable that if Mrs. Weeks had used hospital furnishings to cause her death, or even jumped to her death from a hospital window, *see Harris,* 557 S.W.2d at 356; *Harris Hosp.,* 520 S.W.2d at 816, the appellee might be held liable for her injuries. Given the circumstances of this case, however, appellants cannot fit the cause of action through the statutory loophole to state immunity. The asserted misuse or nonuse of property is much too tenuous to support the exception.

In its motion for a summary judgment appellee properly established that there were no genuine issues of material fact. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). We therefore affirm the trial court's judgment.