SAN ANTONIO STATE HOSPITAL,
Appellant,

v.

Kimberly COWAN, Individually and as
Representative of the Estate of James
Roy Cowan, Jr., Deceased, et al., Appellees.

No. 04–01–00408–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 17, 2001.

Rehearing Overruled En Banc
March 8, 2002.

---

Greg Halbrook, Asst. Atty. Gen., Austin, for Appellant.

Richard W. Hunnicutt, III, Wayne Wright, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE and SARAH B. DUNCAN, Justices.

Opinion by PHIL HARDBERGER, Chief Justice.

This case revisits once again whether immunity has been waived under the Texas Tort Claims Act ("Act") based on the use or misuse of tangible personal property. In this case, suspenders and a walker were used by a suicidal, psychotic patient to terminate his existence by strangling himself to death. The suicide attempt was anticipated. It was the reason the patient was involuntarily committed to the San Antonio State Hospital ("Hospital").

The trial court found sovereign immunity was waived because the patient's death was caused directly and immediately by the walker and suspenders, both items of tangible personal property. We agree and affirm the trial court's order denying the Hospital's plea to the jurisdiction as to the appellees' claim that the Hospital was negligent in "using or misusing tangible personal property; specifically, the suspenders and pipe from the walker which were within the State Hospital's custody, possession and control."

### BACKGROUND

On December 15, 1997, James Roy Cowan, Jr. ("Cowan") was involuntarily committed to the Hospital. Pursuant to a court order, the Hospital was obligated to take protective custody of Cowan and his personal effects for his own protection. Cowan was placed on suicide watch because of psychotic behavior, acute depression, and suicidal tendencies. The Hospital was required to observe Cowan to ensure his safety and welfare every fifteen minutes. While confined in the Hospital, Cowan committed suicide by strangling himself using his suspenders and a piece of pipe from his walker. The suspenders were "logged in" by employees of the Hospital, and Cowan's walker was observed at least twenty-one times prior to his suicide.

Cowan's wife, individually and as representative of Cowan's estate, and as next friend for Cowan's minor children, sued the Hospital, alleging negligence and gross negligence claims. Specifically, the petition alleged the Hospital was negligent by:

1. Failing to properly and adequately monitor James Roy Cowan, Jr. despite actual knowledge of the necessity of doing so;

2. Failing to prohibit James Roy Cowan, Jr. from creating circumstances whereby he could commit suicide or otherwise harm himself;

3. Failing to prohibit James Roy Cowan, Jr. from securing implements, tangible personal property or other devices with which he could commit suicide or otherwise harm himself;

4. Failing to maintain proper control over James Roy Cowan, Jr. such as was necessary to safeguard his well-being under the same or similar circumstances;

5. Failing to properly and adequately implement their own internal policies pertinent to suicide watches and observation;

6. Using or misusing tangible personal property; specifically, the suspenders and pipe from the walker which were within the State Hospital's custody, possession and control;

7. Failing to comply with standard medical practices or exercise sound medical discretion associated with persons under suicide watch;

8. Failing to properly secure the facility, including James Roy Cowan Jr.'s room, to prevent suicide or other harm to his person;

9. Failing to maintain a safe and controlled premises for the care and treatment of James Roy Cowan, Jr., the premises provided amounted to a premises defect; TxCivPrac & Rem Code § 101.022;

10. Failing to have the proper premises and trained personnel available to adequately and properly care and tend to the needs of James Roy Cowan, Jr.; and

11. Failing to anticipate and be prepared for complications in the care and treatment of James Roy Cowan, Jr.

With regard to the Hospital's sovereign immunity, the petition alleges that Cowan's "death and the damages sustained by Plaintiffs were caused by the condition, use or misuse of tangible personal property under circumstances where the Defendant Hospital would be liable to Plaintiffs according to Texas law were it a private person."

The Hospital filed a plea to the jurisdiction, asserting that the appellees' claims did not fall within one of the categories to which a waiver of sovereign immunity applies. The trial court denied the Hospital's plea to the jurisdiction, and the Hospital filed this interlocutory appeal challenging the trial court's order.

## STANDARD OF REVIEW

A trial court's ruling on a plea to the trial court's subject matter jurisdiction is reviewed de novo. *Herring v. Welborn*, 27 S.W.3d 132, 136 (Tex.App.—San Antonio 2000, pet. denied). In determining whether jurisdiction exists, we accept all allegations in the pleadings as true. *Herring*, 27 S.W.3d at 136. We may also consider evidence presented to the trial court that is relevant to the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). Because no evidence was presented to the trial court in the instant case, we look solely to the pleadings to determine the jurisdictional question.

## SOVEREIGN IMMUNITY

The Texas Tort Claims Act ("Act") "provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dept. of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). Under the Act, a governmental entity may be held liable for personal injury caused by a condition or use of tangible personal or real property if the government entity would, were it a private person, be liable to the claimant

according to Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

The Hospital contends that its immunity was not waived under the Act because the petition does not allege any claim based on the use or misuse of tangible personal property or any injury resulting from a premises defect. The Hospital further contends that immunity is not waived for the petition's claims regarding the Hospital's failure to act.

## A. Premises Defect

■ Although the appellees reference a premises defect in their pleadings, none of their claims is properly characterized as a premises defect claim. *See Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 671–72 (Tex.App.—Eastland 1998, pet. denied). The appellees do not claim that Cowan's room at the Hospital was defective or that some other condition existing on the Hospital's real property caused Cowan's injuries.

## B. Use of Tangible Personal Property

The appellees assert that immunity is waived because the Hospital misused the suspenders and the walker by giving the items to Cowan while he was unobserved. The appellees rely on *Overton Memorial Hosp. v. McGuire*, 518 S.W.2d 528 (Tex. 1975).

In *McGuire*, a patient was injured when he fell from his bed while receiving post-operative care. 518 S.W.2d at 528. The patient sued the hospital alleging that the hospital was negligent in providing him with a bed that was not equipped with side rails. *Id.* Summary judgment was granted in favor of the hospital based on immunity. *Id.* On appeal, the intermediate appellate court noted that the record was unclear with respect to whether the hospital had a duty to install bed rails absent a doctor's orders; therefore, the court stated it was unable to determine the applicability of the Act and reversed the judgment and remanded the cause for further development. *Id.* at 529.

The Texas Supreme Court agreed that the hospital was not entitled to summary judgment but asserted that the applicability of the Act could be determined on the record before it. *Id.* Although the record was sketchy, the court stated that it assumed that the hospital had a duty to install bed rails and was negligent in not doing so. *Id.* After examining the language of the Act, the court held that "the injuries proximately caused by negligently providing a bed without bed rails are proximately caused from some condition or some use of tangible personal property under circumstances where a private person would be liable." *Id.*

In *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998), the Texas Supreme Court distinguished its holding in *McGuire*. In *Bossley*, a mentally ill patient escaped an institution through unlocked doors and committed suicide by leaping in front of a truck. *Bossley*, 968 S.W.2d at 340–41. The court concluded that neither the use of tangible property-unlocking the hospital doors-nor their condition-being unlocked-caused the patient's death because the use and condition of the doors were too attenuated from the patient's death to be said to have caused it. *See id.* at 343. Although the court of appeals reached a different result analogizing the case to *McGuire*, the Texas Supreme Court noted that the plaintiff's injury in *McGuire* "was immediately and directly related to the absence of restraints on the side of the bed" while the patient's death in *Bossley* "was distant geographically, temporally, and causally from the open doors at [the institution]." *Id.*

Applying the holdings in *McGuire* and *Bossley*, we must determine whether: (1) the Hospital had a duty not to provide Cowan with access to the suspenders and walker in view of Cowan's suicidal state; and (2) the Hospital's provision of the suspenders and walker proximately caused Cowan's injury.

■ Just as in *McGuire*, the record in this appeal is sketchy with regard to the first issue. It is undisputed, however, that Cowan was involuntarily committed to the Hospital pursuant to a court order. The court order obligated the Hospital to take protective custody of both Cowan and his personal effects for his own protection. The Hospital "logged in" the suspenders and walker; however, the record is unclear with regard to the procedure the Hospital was required to follow in completing this "log in" procedure. Although the record is sketchy, "we must assume that the Hospital had a duty [to take possession of the suspenders and walker] and was negligent in not doing so." *McGuire*, 518 S.W.2d at 529. "We believe that injuries proximately caused by negligently providing [suspenders and a walker to a suicidal patient] are proximately caused from some condition or use of tangible personal property under circumstances where a private person would be liable." As a result, the Hospital employees misused the suspenders and walker by providing them to Cowan in view of his suicidal state.

■ The second question is whether proximate causation is sufficiently established under the standard set forth in *Bossley*. The Hospital contends that the instant case is similar to *Bossley*; however, *Bossley* is factually distinguishable.

In *Bossley*, the plaintiffs asserted that their son's injury was caused by an unlocked door; however, their son's injury was actually caused by a truck that their son ran in front of after escaping through the unlocked door and running one and one-half miles. 968 S.W.2d at 343. Cases decided by this court relying on *Bossley* are similarly distinguishable. In *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 256–57 (Tex.App.—San Antonio 1999, pet. denied), the plaintiff's injuries resulted from fellow patients, not from the unlocked door she walked through before meeting those other patients. In *San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 34 (Tex.App.—San Antonio 1998, pet. denied), the plaintiff was raped after voluntarily accompanying a male acquaintance by crawling through a hole in a fence. In that case, the plaintiff's injuries were caused by the individual who raped her, not by the hole in the fence.

The facts in *Bossley*, *Amador*, and *Koehler* can readily be distinguished from the facts in the instant case. In those cases, the tangible personal property involved did not cause the injury or death because the cause of the injury or death was too attenuated from the claimed use of the tangible personal property. In this case, however, the tangible personal property caused the death in a direct sense. The geography and time was immediate.

We hold that the Hospital employees misused the suspenders and walker by providing them to Cowan in view of his suicidal state, and the provision of the suspenders and walker proximately caused Cowan's death. The Hospital's immunity has been waived as to the appellees' claim that the Hospital was negligent in "using or misusing tangible personal property; specifically, the suspenders and pipe from the walker which were within the State Hospital's custody, possession and control."

## C. Failure to Act

■ The appellees assert numerous additional claims regarding the Hospital's

failure to act. Failures in conduct, including the failure to adequately train employees, do not involve the use of tangible personal property. *See Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 581 (Tex.2001); *Clemons v. Citizens Medical Center*, 54 S.W.3d 463, 467–69 (Tex.App.— Corpus Christi Aug.9, 2001, no pet. h.); *see also Texas Youth Comm'n v. Ryan*, 889 S.W.2d 340, 342 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (holding negligence in supervision and evaluation of student in governmental unit's custody does not trigger waiver of immunity).

### CONCLUSION

We affirm the trial court's order denying the Hospital's plea to the jurisdiction as to the appellees' claim that the Hospital was negligent in "using or misusing tangible personal property; specifically, the suspenders and pipe from the walker which were within the State Hospital's custody, possession and control." The cause is remanded to the trial court for further proceedings as to that claim.

Dissenting opinion by SARAH B. DUNCAN, Justice.

SARAH B. DUNCAN, Justice, dissenting.

I respectfully dissent. Cowan has not alleged either that the SASH premises were defective or that any state employee used the suspenders or walker-one of which is a necessary prerequisite to a waiver of immunity under section 101.021(2). *See Texas Dept. of Transp. v. Able*, 35 S.W.3d 608, 612 (Tex.2000) ("in addition to liability based on principles of respondeat superior, subsection 2 includes governmental liability for premise defects").